IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL MARTINEZ,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>C. RIOS, et al.,<br><br>　　　　Defendants. | No. 2:17-CV-2445-JAM-DMC-P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' unopposed motion to dismiss (ECF No. 15).

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff Miguel Martinez is currently a prisoner at High Desert State Prison (HDSP) in Susanville, California. See ECF No. 1, pg. 1. Plaintiff names the following as defendants: (1) C. Rios; (2) R. Cisneros; and (3) Lt. Davidge. Id. Plaintiff claims that these defendants conspired to have him erroneously classified as a member of the street gang known as "Salinas East Market St." Id. at 3-4. Plaintiff contends that this misconduct resulted in violations of his First and Fourteenth Amendment rights. Id.

///

1

In May of 2016, Corrections Officer C. Rios initiated an investigation into plaintiff's suspected affiliation with the Salinas East Market St. gang. Id. at 5. Rios conducted an interview with plaintiff and observed a red "M" on plaintiff's chest which Rios noted as representing "Market St." in Salinas. Id. at 7. Rios also asked plaintiff how long he had been a member of Salinas East Market St. and plaintiff allegedly responded "since I was fourteen years old." Id. (internal quotations omitted). Also, Rios observed a Mayan tattoo for the number four, a common identifier for members of Norteno street gangs, including Salinas East Market St. Id. Lastly, on May 16, 2016, Rios conducted a cell search and found a drawing in plaintiff's personal property with the initials "S-E-M." Id. at 8. These initials are a common identifier for the Salinas East Market St. gang. Id. On May 20, 2016, Rios allegedly provided all of these documents and disclosures to plaintiff and received no opposition from him. See ECF No. 1, pg. 5. From this investigation, Rios deemed there was enough evidence to identify plaintiff as a member of the Salinas East Market St. gang. Id. The information from Rios' investigation, along with an alleged self-admission of gang-membership made by plaintiff in 2015, was compiled into a validation packet by Lieutenant Davidge and sent to a prison official named Spralue for evaluation. Id. at 9. On February 2, 2017, plaintiff was validated as a member of the Salinas East Market St. gang. Id.

Plaintiff appealed the gang validation on April 19, 2017. Id. at 10. In his appeal, plaintiff asserted that that his validation was fraudulent and denied ever making self-admissions in either 2015 or 2016. Id. Also, plaintiff alleges that Rios misrepresented facts. Id. at 12. Plaintiff argued that Rios never mentioned that the "M" was a documented symbol of the Salinas East Market St. gang. Id. Instead, plaintiff claimed the "M" represented the Minnesota Twins baseball team. Id. Plaintiff also claimed that the letter "M" alone can't be enough for gang determination. Id.

Plaintiff alleges that on May 31, 2016, he tried to discuss his appeal to the gang validation with Corrections Officer Cisneros and another officer, but they denied him the opportunity. Id. at 12. On June 4, 2016, plaintiff made a second attempt to discuss his appeal with Rios and another officer, but they again denied him the opportunity. Id. On May 19, 2017, plaintiff's appeal was denied. See ECF No. 1, pg. 11.

On June 6, 2017, plaintiff submitted another appeal regarding his gang validation. Id. at 11, 13. Plaintiff argued that his alleged "self-admission" was manipulated and that he simply told the interviewers that he "grew up" on the East Side of Salinas, around Market St., not that he was gang affiliated. Id. at 11. Plaintiff also claimed that contentions by interviewers, such as that he was provided the opportunity to be heard, were "lies." Id. at 13 Plaintiff contended in his appeal that they did not hear him out and took the position that his case had "no merit." Id. On August 31, 2017, this appeal was also denied. See id. at 11.

In conjunction with these factual allegations, plaintiff alleges Rios: (1) violated numerous prison policies; (2) initiated the gang validation investigation for retaliatory purposes; and (3) fabricated the documents of "self-admission." See id. at 3. Plaintiff further alleges that Cisneros: (1) conspired with Rios to undermine plaintiff's investigation and defense against his gang validation; (2) was assigned as plaintiff's "investigative employee," which presented a conflict of interest since Cisneros was also involved in the gang validation; and (3) conspired with Rios to retaliate against plaintiff and "screw him over" for making Cisneros' cousin, a prison employee, "do paperwork." Id. Finally, plaintiff alleges that Lt. Davidge: (1) submitted validation documents that were fabricated; and (2) failed to independently confirm the reliability of said documents. Id.

## II. STANDARD OF REVIEW

In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v.

Kerner, 404 U.S. 519, 520 (1972).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

4

## III. DISCUSSION

In their unopposed motion to dismiss, defendants argue that plaintiff has failed to state a valid First Amendment retaliation claim against defendant Rios because: (1) plaintiff's allegations of a "retaliatory purpose" are conclusory and do not identify any protected conduct; and (2) plaintiff does not allege that the retaliation chilled his First Amendment rights. See ECF No. 15-1, pgs. 2-3. Defendants also argue that plaintiff has failed to state a valid Fourteenth Amendment due process claim against any defendant because plaintiff does not identify the deprivation of a protected liberty interest. Id. at 3-4. Defendants' motion is silent as to plaintiff's allegations of retaliation by defendant Cisneros.

### A. Retaliation

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 5

As to the chilling effect, the Ninth Circuit in Rhodes observed: "If Rhodes had not alleged a chilling effect, perhaps his allegations that he suffered harm would suffice, since harm that is more than minimal will almost always have a chilling effect." Id. at n.11. By way of example, the court cited Pratt in which a retaliation claim had been decided without discussing

5

1  chilling. See id. This citation is somewhat confusing in that the court in Pratt had no reason to

2  discuss chilling because it concluded that the plaintiff could not prove the absence of legitimate

3  penological interests. See Pratt, 65 F.3d at 808-09. Nonetheless, while the court has clearly

4  stated that one of the "basic elements" of a First Amendment retaliation claim is that the adverse

5  action "chilled the inmates exercise of his First Amendment rights," id. at 567-68, see also

6  Resnick, 213 F.3d at 449, the comment in Rhodes at footnote 11 suggests that adverse action

7  which is more than minimal satisfies this element. Thus, if this reading of Rhodes is correct, the

8  chilling effect element is essentially subsumed by adverse action.

### 1. Defendant Rios

Defendants make the following argument as to plaintiff's retaliation claims:

> . . .Plaintiff's claim that Defendant Rios initiated an investigation into his suspected membership and/or association with a security threat group for "retaliatory purposes" is conclusory, *See Iqbal*, 556 U.S. at 678 (conclusory statements insufficient to state a claim), and does not identify what protected conduct he was engaged in or that the alleged retaliation chilled the exercise of his First Amendment rights. *See Cox v. Ashcroft*, 603 F. Supp. 2d 1261, 1271 (E.D. Cal. 2009) ("To make out a prima facie case of retaliation, the plaintiff has the burden of showing that retaliation for the exercise of a protected right was the but-for factor behind the defendant's conduct."); *See also, e.g., Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1120 (S.D. Cal. 2007) (no cognizable claim for retaliation where plaintiff failed to show that he was engaged in constitutionally protected conduct)."

ECF No. 15-1, pg. 3.

Defendants present no argument concerning plaintiff's retaliation claim against defendant Cisneros.

Defendants' argument is persuasive. According to plaintiff, defendant Rios "initiated this investigation [into plaintiff's gang affiliation] for retaliatory purposes that served no penological interest." ECF No. 1, pg. 3. As defendants note, plaintiff has not alleged that the gang affiliation investigation was initiated <u>because</u> plaintiff was engaged in protected activity. Nor can he. As defendants also note, plaintiff does not allege that he was engaged in any protected conduct <u>prior</u> to initiation of the gang affiliation investigation. Thus, plaintiff fails to allege any facts to support his conclusory statement that defendant Rios initiated the gang validation investigation for a retaliatory purpose. Plaintiff should be provided an opportunity to

amend to allege further facts to support his contention that defendant Rios retaliated against him by initiating the gang validation process.

### 2. Defendant Cisneros

Plaintiff alleges defendant Cisneros "conspired with c/o Rios to get plaintiff validated in order to retaliate against plaintiff and to 'screw him over for making his (i.e., Cisneros') cousin do paperwork.'" ECF No. 1, pg. 4. This allegation, which the court has found sufficient to state a retaliation claim against defendant Cisneros, is not challenged by defendants in the current motion.

## B. Due Process

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or property interest for which the protection is sought. See Ingraham v. Wright, 430 U.S. 651, 672 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972).

Liberty interests can arise both from the Constitution and from state law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976); Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993). In determining whether state law confers a liberty interest, the Supreme Court has adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation. See Sandin v. Connor, 515 U.S. 472, 481-84 (1995). In doing so, the Court has held that state law creates a liberty interest deserving of protection only where the deprivation in question: (1) restrains the inmate's freedom in a manner not expected from the sentence; and (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483-84

Here, defendants argue:

> . . .Plaintiff has failed to state a cognizable substantive due process claim under the Fourteenth Amendment based on his allegation that Defendant Rios fabricated documents because he has alleged no facts indicating that these alleged fabricated documents were used to deprive him of his liberty (e.g., the documents were used to support a criminal charge). *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017) (to prevail on a Devereaux claim, a plaintiff must prove deliberate fabrication of

| | |
|---|---|
| 1 | evidence, and that the fabrication caused a deprivation of liberty)." |
| 2 | * * * |
| 3 | . . .Plaintiff has not stated a cognizable procedural due process claim under the Fourteenth Amendment because he has not alleged any facts indicating that his validation adversely affected a constitutionally protected liberty or property interest. *See, e.g., Chappell v. Mandeville*, 706 F.3d 1052, 1062-63 (9th Cir. 2013) (plaintiff's due process claim failed because he could not identify a liberty interest under the Fourteenth Amendment)." |
| 7 | ECF No. 15-1, pgs. 3-4. |

This court finds defendants' arguments persuasive. Plaintiff alleges that defendants violated his due process rights by conspiring to put forth fabricated evidence and wrongly classify him as a member of a street gang. See ECF No. 1, pgs. 3-4. As noted above, a change in a prisoner's confinement that imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" may give rise to a due process claim. See Sandin, 515 U.S. at 83-84. Also, as this court has acknowledged, the fraudulent or malicious identification of a prisoner as a member of a "security threat group" may give rise to a due process claim. See Castro v. Terhune, 712 F.3d 1304, 1313-14 (9th Cir. 2013); Rios v. Tilton, No. 2:07-cv-0790 KJN P, 2016 U.S. Dist. LEXIS 241, at *6-7 n.2 (E.D. Cal. Jan. 4, 2016). However, plaintiff has failed to allege facts which explain how, or if, his classification as a member of a street gang has adversely affected his liberty interests.  It is unclear what deprivation or injury plaintiff alleges to have suffered in relation to being validated as a member of the Salinas East Market St. gang.  As such, plaintiff has not properly articulated a due process claim.  Plaintiff should be granted leave to amend.

///
///
///
///
///
///
///

## IV. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Defendants' unopposed motion to dismiss (ECF No. 15) be granted;

2. Plaintiff's retaliation claim against defendant Rios be dismissed with leave to amend;

3. Plaintiff's due process claims against all defendants be dismissed with leave to amend; and

4. Plaintiff be advised that the failure to file a first amended complaint within the time provided shall result in dismissal of all claims and defendants <u>except</u> plaintiff's retaliation claim against defendant Cisneros only.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. <u>See</u> <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: November 5, 2019

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE